IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-40-D

NAPIER SANDFORD FULLER,  )
                         )
            Plaintiff,   )
                         )
v.                       )     **ORDER**
                         )
SEAN M. DIXON, et al.,   )
                         )
            Defendants.  )

On March 8, 2021, Napier Sandford Fuller ("Fuller" or "plaintiff"), proceeding pro se, filed a verified complaint alleging claims under 42 U.S.C. § 1983 and state law [D.E. 1]. On August 31, 2021, the court granted in part Fuller's motions to amend, allowing Fuller to name Dixon as a defendant and to add a request for nominal damages, denied Fuller's motion for expedited discovery, dismissed Fuller's claims against the John Doe defendants without prejudice, and directed Fuller to present summonses for issuance. See [D.E. 10].

On October 29, 2021, Fuller filed an amended complaint [D.E. 13] and presented summonses to the clerk for issuance [D.E. 14]. Fuller addressed one summons to Dixon and the other to "NEW HANOVER COUNTY County Attorney" [D.E. 14-1]. On November 10, 2021, Fuller filed a return of service indicating that the summons addressed to "New Hanover County Attorney" was delivered by personal service to Sharon Huffman on November 3, 2021. See [D.E. 15] 2.

Both defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and New Hanover County additionally moves to dismiss based on Rules 12(b)(2) and 12(b)(5). See [D.E. 19]; [D.E. 30]. The court notified Fuller about the motions to dismiss and the consequences of failing to respond [D.E. 21, 32]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th

Cir. 1975) (per curiam). Fuller responded in opposition to the motions [D.E. 22, 33], and defendants replied [D.E. 23, 34]. Fuller moves for leave to file surreplies [D.E. 24, 36], and for extensions of time in which to file surreplies or to otherwise ask the court to construe his current filings as timely [D.E. 26, 35]. As explained below the court grants the motions in part and dismisses the action.

I.

"On the morning of February 2, 2017 about 10:45am, Mr. Fuller was pulling into one of his industrial properties in his blue 2008 Toyota Prius when he first observed the blue lights of a police car in his rear view mirror." Am. Compl. [D.E. 13] ¶ 19. Fuller stopped his car "in the rear [of] the northernmost warehouse property[, a] . . . portion of the complex which is used for truck storage." Id. ¶ 21; see also ¶ 60. "After some delay, a New Hanover County Sheriff's deputy (believed to be 'Corporal Spivey') approached Mr. Fuller's parked vehicle . . . and requested identification through Mr. Fuller's driver's side window that was then rolled down." Id. ¶ 23. Fuller complied with the deputy's instructions, but the deputy used a "belligerent tone" and Fuller "became very frightened[.]" Id. ¶¶ 24–27.

Fuller "has an unseen mental disability"[1] which caused Fuller to "l[ose] control of his emotions – i.e., his heart was racing and his eyes watered due to fear." Id. ¶¶ 28–30. "To regain control, Mr. Fuller shut his eyes and started to pray – keeping both hands on the steering wheel and disengaging from Deputy Spivey and remained silent – the adrenaline release causes Mr. Fuller to shake in his extremities." Id. ¶ 31.

"Just as Mr. Fuller was starting to regain his mental composure, four more law enforcement vehicles arrived on the scene in what could be described as a 'SWAT Team' like escalation." Id. ¶

---

[1] Fuller alleges that Spivey did not "inquire as to Mr. Fuller's health[,]" Am. Compl. ¶ 32. Fuller does not allege that he informed Spivey or any of the officers of his alleged condition.

2

33. Fuller "became so frightened it was if he was paralyzed" and he was "trembling[,]" but "tried to comply with the commands given to him by the arresting officers." Id. ¶¶ 35, 38–39. The officers placed Fuller in handcuffs and informed him that they were arresting him on "lawful[] . . . warrants that had issued from campus police in Chapel Hill." Id. ¶ 37 & n.2.

Following "a quick pat-down for weapons[,]" the officers asked Fuller if "he has any drugs on his person" and Fuller told them that he had "methylphenidate . . . prescribed . . . by a medical doctor." Id. ¶¶ 40, 42. "A deputy conducted a cavity search of Mr. Fuller's nose for drug residue – yet nothing was found and no mention of the cavity search was made in the police report." Id. ¶ 44.

The officers then notified Fuller that "an additional search will be conducted by an officer with gloves[,]" and a deputy searched Fuller's pants pockets, "mak[ing] direct contact with his buttocks[,] . . . . penis and scrotum through the fabric." Id. ¶¶ 45–46, 49–51. "Mr. Fuller was repulsed by this direct contact with his genitals – highly offensive – while the deputy ordered him to look away." Id. ¶ 52. "The deputies put something into a evidence bag." Id. ¶ 53. "Fearing that addition[al] drug charges are possible," Fuller informed the officers that his prescription was in his car and named his doctor, but the officers "ignored Mr. Fuller's claim of lawfully possessing a prescription medication[]" and made no attempt to verify Fuller's statements. Id. ¶¶ 55–56. "[T]he prescription for the medication leading to his arrest was clearly visible in the front passenger's side – it was sitting on the floor boards in plain view." Id. ¶ 65.

"After a few minutes, a deputy demand[ed] Mr. Fuller's key stating his Toyota needed to be moved for safety so as not to block the traffic." Id. ¶ 59. Fuller "suspected that the deputies were going to search his Toyota without a warrant under the pretense of 'safety[,]'" but "[could not] see what's going on with his Toyota" because of his position. Id. ¶¶ 58, 61. "At no point did Mr. Fuller

3

permit the deputies to search his Toyota or to drive it." Id. ¶ 62. "Eventually Mr. Fuller's key was returned by a deputy, and Mr. Fuller was transported to jail in the cage like enclosure of a police car while in handcuffs." Id. ¶ 63.

"Once in the New Hanover County jail, Mr. Fuller was charged with narcotics possession at the urging of the arresting officers as an 'add on' at their discretion; he bonded out after spending about 4 hours in jail." Id. ¶ 64. Fuller alleges that "[t]he police report of the narcotics investigation of Mr. Fuller omitted several key matters that were excul[p]atory[,]" and "the narcotics charges were dropped with prejudice a few weeks later." Id. ¶¶ 68, 75.

Fuller asserts claims against unspecified defendants under the Fourth Amendment concerning the search of his person and vehicle, his arrest for possession of narcotics, his prosecution for possession of narcotics, and state law claims for conspiracy. See id. at 12–19.[2] Fuller alleges a 42 U.S.C. § 1983 claim against Dixon for making false public statements when he testified "in a related criminal trial . . . . that Mr. Fuller had still violated a [nonexistent] law requiring that a prescription medication be transported in a labeled bottle." Id. at 16–17 (emphasis in original omitted). Fuller also alleges a section 1983 claim against New Hanover County "[u]nder Monell . . . for years of bad policies towards those covered under Title II of the ADA and also involved in the county's criminal justice process[,]" and a state law claim of negligence and tortious interference by "seizing Plaintiff's lawfully prescrib[]ed medication and thereby preventing Plaintiff's taking it as directed by a medical doctor" and "refus[ing] to return Plaintiff's medication" after the dismissal of the criminal case. Id. at 19–21. Fuller seeks declaratory relief, injunctive relief, "costs and reasonable attorneys' fees[,]" and nominal damages. See id. at 22.

---

[2] Fuller alleges that "Defendants in th[ese] claim[s] are 'persons,' as that term is used in the text of 42 U.S.C. § 1983: including Dixon and John Does #1-8 yet excluding the government entity." Am. Compl. ¶¶ 84, 102, 111, 120, 137, 145.

4

## II.

### A.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a party's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

### B.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; see Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 566 U.S. 318, 326 (2012); Bell v. Wolfish, 441 U.S. 520, 558–59 (1979); Henry v. Hulett, 969 F.3d 769, 779 (7th Cir. 2020) (en banc) (collecting circuit cases). "Additionally, the protections of the Fourth Amendment are triggered when an individual seeking refuge under the Amendment has a legitimate expectation of

5

privacy in the invaded place or the item seized." Doe v. Broderick, 225 F.3d 440, 450 (4th Cir. 2000) (quotation omitted).

Dixon and the other officers were entitled to stop Fuller in order to effect a lawful arrest warrant and to conduct a patdown search of Fuller incident to that arrest. See Michigan v. DeFillippo, 443 U.S. 31, 35–36 (1979); United States v. Robinson, 414 U.S. 218, 224–25 (1973), clarified on other grounds by Arizona v. Gant, 556 U.S. 332 (2009); Chimel v. California, 395 U.S. 752, 763 (1969). After discovering a loose pill in Fuller's pants, the officers had the authority to search the passenger compartment of Fuller's car incident to his arrest. See, e.g., Arizona v. Gant, 556 U.S. 332, 351 (2009); New York v. Belton, 453 U.S. 454, 462–63 (1981), limited by Arizona v. Gant, 556 U.S. 332 (2009).[3] Moreover, Fuller has failed to plead any circumstances which could lead a trier of fact to find that any officer conducted the patdown search in an unreasonable manner. See, e.g., Fisher v. Murry, No. 3:20CV905-HEH, 2022 WL 1785239, at *3 & n.4 (E.D. Va. June 1, 2022) (unpublished); Reeder v. Vanpelt, No. 6:18-CV-00416-TMC-JDA, 2018 WL 6933434, at *7 (D.S.C. Sept. 20, 2018) (unpublished), report and recommendation adopted, 2018 WL 6288253 (D.S.C. Dec. 3, 2018) (unpublished); Lewis v. Hawkins, No. 3:16-CV-315-TAV-HBG, 2018 WL 1177473, at *5 (E.D. Tenn. Mar. 6, 2018) (unpublished); cf. Sims v. Labowitz, 885 F.3d 254, 260–62 (4th Cir. 2018); Bradley v. United States, 299 F.3d 197, 203–04 (3d Cir. 2002). Accordingly, Fuller has not plausibly alleged a Fourth Amendment violation.

As for Dixon's testimony in a related criminal trial, Fuller has failed to state a claim. See Briscoe v. LaHue, 460 U.S. 325, 342–46 (1983); Smith v. McCarthy, 349 F. App'x 851, 858 n.10 (4th Cir. 2009) (per curiam) (unpublished).

---

[3] It is unclear whether the officers actually searched Fuller's car or simply moved it.

6

Case 7:21-cv-00040-D   Document 38   Filed 08/11/22   Page 6 of 9

C.

New Hanover County argues that Fuller failed to properly serve it. See Fed. R. Civ. P. 12(b)(5). Proper service of process (or waiver of service under Federal Rule of Civil Procedure 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. See Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999); Life Techs. Corp. v. Govindaraj, 931 F.3d 259, 264–65 (4th Cir. 2019). "The plaintiff bears the burden of proving that process has been properly served under the Federal Rule of Civil Procedure 4." Murphy v. Cleveland Cnty., No. 1:21-CV-5-MOC-DSC, 2021 WL 3824684, at *4 (W.D.N.C. Aug. 26, 2021) (unpublished) (quotations omitted); see Scott v. Md. State Dep't of Labor, 673 F. App'x 299, 304 (4th Cir. 2016) (per curiam) (unpublished); Reale v. Wake Cnty. Human Servs., No. 5:11–CV–682–D, 2013 WL 2635181, at *1 (E.D.N.C. June 12, 2013) (unpublished).

Federal Rule of Civil Procedure 4(j)(2) governs the service of process on a county, and requires service of process on "its chief executive officer . . . or in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). North Carolina permits service of process on the "county manager or to the chairman, clerk or any member of the board of commissioners for such county[.]" N.C. Gen. Stat. § 1A-1, Rule 4(j)(5)(b). "Here, Plaintiff did not attempt to deliver a copy of the Summons and Complaint to the County Manager of [New Hanover] County as set forth in Federal Rule of Civil Procedure 4(j)(2)(A). Instead, Plaintiff attempted to effect service on [New Hanover] County by directing the Summons to the County Attorney." Murphy, 2021 WL 3824684, at *4.

Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time," unless the plaintiff can show good

7

cause. Fed. R. Civ. P. 4(m). Pro se status alone does not "establish good cause, even where the pro se plaintiff mistakenly believes that service was made properly." Hansan v. Fairfax Cnty. School Bd., 405 F. App'x 793, 794 (4th Cir. 2010) (per curiam) (unpublished) (emphasis added); see, e.g., Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149–52 (1984) (per curiam); Sys. Signs Supplies v. U.S. Dep't of Justice, 903 F.2d 1011, 1013–14 (5th Cir. 1990) (per curiam). Moreover, although the court enjoys some discretion in enforcing Rule 4 when there is actual notice, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984), abrogated in part on other grounds by S.J. Groves & Sons Co. v. J.A. Montgomery, Inc., 866 F.2d 101 (4th Cir. 1989).

"[C]ourts generally allow pro se plaintiffs a chance to remedy technical insufficiencies in service of process." Thomas v. Nelms, No. 1:09-CV-491, 2013 WL 593419, at *1 (M.D.N.C. Feb. 14, 2013) (unpublished) (emphasis added); see Murphy, 2021 WL 3824684, at *4–5. The court need not do so here, however, due to fundamental defects in the complaint.

"Under North Carolina law, sheriffs have substantial independence from county government." Parker v. Bladen Cnty., 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008). County governments do not hire sheriffs. See, e.g., id.; Little v. Smith, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000). Thus, under North Carolina law, any allegations concerning personnel, training, or other law enforcement policies in the sheriff's office fall within the sheriff's policymaking authority and are not attributable to the county. See, e.g., Parker, 583 F. Supp. 2d at 739–40; Little, 114 F. Supp. 2d at 446. Accordingly, Fuller has failed to state a claim against New Hanover County.

8

III.

In sum, the court DENIES plaintiff's motions for leave to file surreplies and for extensions of time in which to file surreplies or to otherwise ask the court to construe his current filings as timely [D.E. 24, 26, 35, 36]. The court GRANTS IN PART defendants' motions to dismiss [D.E. 19, 30], and DISMISSES plaintiff's federal claims. In light of the dismissal of plaintiff's federal claims, the court DECLINES to exercise supplemental jurisdiction over any state-law claims and DISMISSES WITHOUT PREJUDICE those claims. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). The clerk shall close the case.

SO ORDERED. This 11 day of August, 2022.

JAMES C. DEVER III
United States District Judge